IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

James Bennett Latham, Jr., )
    Petitioner, )
  )
v. ) 1:07cv910 (JCC/TCB)
  )
Gene M. Johnson, et al., )
    Respondent. )

### MEMORANDUM OPINION

James Bennett Latham, Jr., a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983. By Memorandum Opinion and Order dated October 22, 2007, plaintiff's claims 1, 2, 4, 5, 6, 7, 8, and 9 were dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1) and plaintiff was directed to particularize and amend his complaint with respect to claim 3. On November 20, 2007, plaintiff filed a "Motion for Enlargement of Time to File Response," which was granted by Order dated November 29, 2007. Now before the Court is plaintiff's amended complaint. In his amended complaint, plaintiff claims:

1. Defendants Lee, Spiers, Batts, and Schilling violated his Eighth Amendment rights by requiring him to shave before he could obtain a "No Shave Profile" in spite of his pseudofolliculities barbae ("PFB");

2. Defendant Parks violated his Eighth Amendment rights by failing to provide him with medical treatment for the pustules that developed on his neck, chin, and face as a result of shaving;

3. Defendants Spiers, Batts, and Shilling violated his rights by failing or refusing to take action to ensure that plaintiff's "VDOC [Virginia Department of Corrections] inflicted, PFB outbreak was treated" after defendant Parks failed to provide treatment;

4. Defendants Batts and Shilling violated plaintiff's rights with their "policy based approval and support" concerning the individuals with the authority to conduct evaluations and provide treatment for plaintiff's PFB outbreaks; and

> 5. Defendant Johnson violated his rights by instituting the VDOC's Department Operating Procedure ("DOP") 864 [the Shaving Guidelines], which is "designed to promote and inflict pain and suffering through the repetitive establishment of plaintiff's PFB affliction and outbreaks in contrast to documented medical history of PFB."

Plaintiff seeks declaratory, injunctive, and monetary relief. After reviewing plaintiff's amended complaint, the claims against defendants must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.[1]

## I. Background

The events giving rise to plaintiff's amended complaint took place at the Greensville Correctional Center. On June 27, 2006, plaintiff went to the infirmary to receive an evaluation which would allow him to renew his "No Shave Profile." Amend. Compl. 2. During his medical visit, defendant Nurse Lee informed plaintiff that "he would have to shave to prove that he actually suffered with pseudofolliculitis barbae[2], in order to receive the renewed medical order that would

---

[1] Section 1915A provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
   (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
   (2) seeks monetary relief from a defendant who is immune from such relief.

[2] Plaintiff states that PFB "is an incurable medical disorder [t]hat [] is exacerbated primarily by shaving." Amend. Compl. 3. He claims that "the pain and suffering associated there with [sic] is attributed to the ingrowing of facial hairs and resulting pustules that are representative of gross irritation." Id. at 3-4. He alleges further that, "[w]hen these pustules pop, open sores are left ... [which] form [sic] a medical stand point [sic] make anyone woefully susceptible to the contracting

allow him not to have to shave." Id. On August 22, 2006, plaintiff reported to the infirmary for an evaluation after having shaved his facial area in accordance with Nurse Lee's instructions. Id. at 4. During this second visit, defendant Nurse Parks determined that it was necessary to renew plaintiff's "no shave medical order" for one year. Id. In Parks' evaluation, she noted the presence of pustules on plaintiff's neck, chin, and face, and plaintiff alleges that she did not provide any treatment for the pustules despite his request. Id. at 5.

Following Parks' evaluation and alleged failure to provide treatment for plaintiff's pustules, plaintiff filed two informal grievances, to which defendant Spiers responded on September 7, 2006. Id. at 6. Spiers found plaintiff's grievances without merit because plaintiff had already received his No Shave Profile. Inf. Compl. # # 55408, 55409. Next, plaintiff filed three Level I grievances to which defendant Batts responded. Id. at 7. Batts declared plaintiff's first grievance "unfounded" because "according to DOC No Shave Profile Guidelines, each time you come to medical for evaluation of a no shave profile, you must be clean shaven." Level I Grievance Resp. #240-14527. Batts declared plaintiff's second grievance "founded" because there was no documentation of treatment for his pustules in his medical file and his third grievance "founded" because there was no doctor's signature on his no shave profile.[3] Level I Grievance Resps. # # 240-14676, 240-14678. Plaintiff claims that, "[c]ontrary to the founded ruling, Batts did not direct medical to render treatment to him for his PFB outbreak." Amend. Compl. 8. He complains further that Batts failed to provide plaintiff with a remedy for his third grievance, which was also deemed "founded." Id. at

---

of bacterial infections ... [such as] HIV." Id. at 4.

[3] However, Batts noted that plaintiff did receive his no shave profile on September 6, 2006, two weeks after his initial evaluation. Level I Grievance Resp. #240-14678.

3

9.

Defendant Shilling responded to plaintiff's Level II grievances. In response to plaintiff's second grievance, Shilling wrote, "[i]f you feel you need further treatment, you are encouraged to submit a sick call request to medical to discuss your concerns." Id. at 10; Level II Grievance Resp. #240-14676. In response to plaintiff's third grievance, Shilling informed plaintiff that "[t]he medical staff is to ensure that nurse's notes are to be co-signed in a timely manner when treatment has been requested" and noted that plaintiff received his no shave profile on "9/6/06." Level II Grievance Resp. #240-14678.

Plaintiff concludes his amended complaint by stating his belief that "the collective actions" of defendants Lee, Parks, Spiers, Batts, and Shilling made him "susceptible to the contraction of medical conditions far worse than PFB, ... cause[d] him pain and suffering, ...[and resulted in their] fail[ure] to render reasonably warranted medical treatment in light of [plaintiff's] PFB outbreak." Amend. Compl. 12. Finally, plaintiff claims that "VDOC Director Gene M. Johnson bears the ultimate responsibility in the implementation and approval of his VDOC Shaving Guidelines ... [which] deliberately inflict and promote pain and suffering while failing to have in place expressed guidelines that promote immediately [sic] treatment for that very infliction." Id. at 13. Plaintiff seeks injunctive and declaratory relief as well as monetary damages in the amount of $140,000.00.

## II. Standard of Review

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker,

9 F. Supp. 2d 641, 642 (E.D. Va. 1998). In considering a motion to dismiss, the court presumes that all factual allegations in the complaint are true and accords all reasonable inferences to the non-moving party. 2A Moore's Federal Practice ¶ 12.07[2.5] (2d ed. 1994); see also Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir. 1978), cert. denied, 446 U.S. 928 (1980). The court will not accept as true "conclusory allegations regarding the legal effect of the facts alleged." Labram v. Havel, 43 F.3d 918, 921 (4th Cir. 1995). Nor will the court develop tangential claims when the essence of the complaint concerns another issue. Beaudett v. Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). However, a complaint should not be dismissed for failure to state a claim as long as it states a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (finding that a "plausible" claim is more than conceivable, but could be less than the "no set of facts" standard outlined in Conley v. Gibson, 355 U.S. 41, 45-6 (1957), which has long been used to evaluate complaints subject to 12(b)(6)).

### III. Merits

#### A. Claims 1 through 4 - Inadequate Medical Care

Plaintiff fails to state a claim that defendants Lee, Parks, Spiers, Batts, and Shilling provided him with inadequate medical care for his PFB in violation of the Eighth Amendment. To state a claim of inadequate medical care that rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976); see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. Second, he must allege deliberate indifference to that serious medical need. Under this second prong, an

assertion of mere negligence or malpractice is not enough to state an Eighth Amendment violation; instead, plaintiff must allege and demonstrate "[d]eliberate indifference ... by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see Estelle, 429 U.S. at 106. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted).

Even assuming that plaintiff has PFB and that shaving prior to his August 22, 2006 medical appointment resulted in razor bumps, plaintiff fails to establish that his PFB is a serious medical need. When an inmate suffers from a condition for which lack of treatment perpetuates severe pain, a serious medical need is present, see Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986), and the Fourth Circuit has recognized that untreated wounds or injuries may constitute serious medical needs. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). The razor bumps that plaintiff alleges, which result from ingrown hairs, even if left untreated, constitute a minimal medical need when compared to a broken arm or a bullet wound. Thus, plaintiff fails to establish that his PFB constitutes a serious medical need. See, e.g., Cooper, 814 F.2d at 945; Loe, 582 F.2d at 1296. Additionally, while the Fourth Circuit has not addressed whether PFB constitutes a serious medical need, one circuit court and some district courts have held that PFB, also known as shaving or razor bumps, does not constitute a serious medical need. Shabazz v. Barnauskas, 790 F.2d 1536, 1538 (11th Cir. 1986); Grate v. Huffman, No. 7:07-cv-449, 2007 U.S. Dist. LEXIS 81790, at *11-12 (W.D.Va. Nov. 5, 2007)

(reasoning that while "[p]laintiff may have sensitive skin that makes shaving unpleasant, [] the occurrence of razor bumps ... is not a complaint that rises to the level of constitutional significance as a serious medical need); Small v. Cole, No. 2:04-cv-180, 2005 U.S. Dist. LEXIS 19319, at *7-8 (N.D. Tx. Sept. 6, 2005) (finding that plaintiff who alleged that he suffered "a skin infection resulting in pain, discomfort, sores, disfigurement of his face and neck, scarring, and low self-esteem" as a result of PFB failed to state a claim of deliberate indifference to his serious medical need). In Shabazz, the Eleventh Circuit concluded that prison officials did not violate the Eighth Amendment by requiring plaintiff, who had been issued a "permanent non-shaving permit" by a physician, to shave, in contravention of the physician's order, because PFB does not constitute a serious medical need. Shabazz, 790 F.2d at 1538. Similarly, in the instant case, even though plaintiff was required to shave despite his PFB, he fails to state an Eighth Amendment claim because PFB does not constitute a serious medical need. Shabazz, 790 F.2d at 1538; Small, No. 2:04-cv-180 at *7.

Moreover, even if plaintiff's PFB did constitute a serious medical need, his Eighth Amendment claim would fail because prison officials were not deliberately indifferent. Plaintiff alleges, and his "founded" Level I grievance confirms, that he did not receive treatment for the pustules that developed on his face, chin, and neck after he shaved in preparation for his medical appointment. Amend. Compl. 5; Level I Grievance Resp. #240-14676. However, the nurse's failure to provide treatment for plaintiff's pustules merely highlights a disagreement between the nurse and the plaintiff about the proper course of treatment, which does not rise to the level of a constitutional

violation.[4] Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975) (finding that medical judgments are not judicially reviewable). Additionally, both the Level I and Level II responses to plaintiff's grievances reveal that the prison officials were not deliberately indifferent to his medical needs. In the Level I Grievance Response, plaintiff was notified that "[m]edical has standing treatments available" and in the Level II Response, plaintiff was "encouraged to submit a sick call request to medical." Level I & II Grievance Resps. #240-14676. Because the nurse's initial failure to treat plaintiff was a mere disagreement as to the proper course of action and because prison officials encouraged plaintiff to seek treatment if the pustules continued to cause him discomfort, plaintiff cannot demonstrate the actual intent or reckless disregard necessary to make out a claim of deliberate indifference. Miltier, 896 F.2d at 851. Because plaintiff fails to demonstrate that PFB is a serious medical need or that defendants were deliberately indifferent, plaintiff he has not stated a claim that rises to the level of an Eighth Amendment violation and claims 1 through 4 will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

B. Claim 5 - Supervisory Liability

In claim 5, plaintiff alleges that defendant Johnson violated his constitutional rights because Johnson, as the Director of VDOC, is ultimately responsibility for VDOC's Shaving Guidelines, which plaintiff claims "deliberately inflict and promote pain and suffering while failing to have in place expressed guidelines that promote immediately [sic] treatment for that very infliction."

---

[4] Specifically with respect to PFB, where a doctor refuses to issue a no shave profile for an inmate who "claim[ed] that as a result of shaving, he developed razor bumps, scabs, and sores with pus" and then denied the inmate medical care for his razor bumps, the plaintiff failed to state a claim of deliberate indifference because "mere disagreement between and inmate and a physician as to the proper course of treatment does not rise to the level of a constitutional violation." Sykes V. Thompson, No. 2:03-cv-585, 2004 WL 3258268, at *2 (E.D. Va. Nov. 30, 2004) (citing Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)).

Amend. Compl. 13. In certain circumstances, supervisory officials may be held liable for the constitutional injuries inflicted by their subordinates. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). Supervisory liability, however, is not premised on respondeat superior, but upon "a recognition that supervisory indifference or tacit authorization of subordinates misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798 (quoting Slakan, 737 F.2d at 372-73). "[L]iability ultimately is determined 'by pinpointing the persons in the decision-making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" Id. at 798 (quoting Slakan, 737 F.2d at 376). In order to establish supervisory liability under § 1983, there are three necessary elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted).

To satisfy the first element, a plaintiff must show: "(1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to plaintiff." Id. at 799. "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions . . . ." Id. at 799 (citing Slakan, 737 F.2d at 373-74). To satisfy the second element, "[a] plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id. at 799 (citing Miltier, 896

F.2d at 896). In the instant case, plaintiff has failed to allege or adduce facts that defendant Johnson had any knowledge of plaintiff's concerns regarding VDOC's Shaving Guidelines or that Johnson was aware of the impact that the guidelines have on inmates with PFB. Additionally, plaintiff fails to present facts that would suggest that Johnson was deliberately indifferent to plaintiff's concerns or that Johnson has any knowledge about how the Shaving Guidelines are implemented in individual prisons. Moreover, because plaintiff fails to state a constitutional claim against any of Johnson's employees, plaintiff cannot maintain a claim against Johnson as their supervisor. Because plaintiff has failed to establish a basis for supervisory liability as to defendant Johnson, claim 5 must be dismissed, pursuant to 28 U.S.C. § 1915A, for failure to state a claim.

An appropriate Order shall issue.

Entered this \_\_14\_\_ day of \_\_January\_\_ 2008.

/s/
James C. Cacheris
United States District Judge

Alexandria, Virginia